**Allen V. RILEY et al., Appellants,**

v.

**EMPIRE SERVICE COMPANY et al., Appellees.**

No. 3458.

Court of Civil Appeals of Texas.

Eastland.

June 26, 1959.

Rehearing Denied Sept. 4, 1959.

Fritz & Vinson, Dallas, for appellants.

Andrew J. MacMaster, H. B. Houston, Carl C. Mays, Dallas, for appellees.

WALTER, Justice.

Allen V. Riley and Samuel W. Riley filed suit against several loan officers and companies for damages for physical illness, mental and emotional pain allegedly resulting from unreasonable collection efforts and for penalties for usurious interest charged and collected by the loan companies. Bankers Health and Accident Company was also named as a defendant. Settlement was made with all the companies except Empire Service Company, hereinafter referred to as Empire, and Bankers Health and Accident Company, hereinafter referred to as Bankers. Empire filed a waiver of defenses and consented to the entry of judgment against it for $174, being double the amount of the usurious interest collected. Bankers filed a motion for summary judgment which was granted. After a trial by a jury, judgment was entered for the plaintiffs for $174 as a recovery for plaintiffs' damages for usurious interest charged and collected, but plaintiffs were denied a recovery against Empire for their other damages and plaintiffs have appealed from such judgment asserting (1) the error of the trial court in overruling their motion for a mistrial because of jury misconduct, (2) because the court limited appellants' argument to forty-five minutes, (3) in refusing to admit and consider evidence of bad character of one of the jurors, (4) in sustaining appellees' objection to appellants' jury argument, (5)

because the trial court in sustaining an objection said, "There is no showing as to what was paid." (6) in refusing requested instructions and in sustaining another objection to appellants' jury argument. Appellant also contends that there was no evidence to support the jury's answers to special issues No. 4 and No. 6 and that the jury's answers to these two special issues were against the overwhelming weight of the evidence.

■ Bankers had written insurance required by Empire on each loan transaction. Appellants contend that Bankers participated in the transaction and a charge of usurious interest was made by the lender and that some of the provisions of the insurance code were violated and, therefore, Bankers was jointly liable with the lender for all damages. This point has been fully discussed in the case of Western Guaranty Loan Co. v. Dean, Tex.Civ.App., 309 S.W. 2d 857, and decided adversely to appellants' contention. Based on the authority of the Dean case, we hold the court correctly entered a summary judgment for Bankers.

■ Appellants' points that the jury's answers to special issues No. 4 and No. 6 were against the overwhelming weight of the evidence must be sustained. Our Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, has set forth the duties of the Courts of Civil Appeals in the exercise of their constitutional powers to pass on this question. Following the principles of law set forth by our Supreme Court in the King's Estate case, we have concluded that the jury's answers to special issues No. 4 and No. 6 were against the overwhelming weight of the evidence.

The jury found that Empire had made unreasonable collection efforts against the Rileys, but in answer to special issue No. 4 it found that neither Mr. nor Mrs. Riley had suffered physical illness as a result of such collection efforts. It also found in answer to special issue No. 6 that Mr. Riley was not discharged by his employer after

Empire made these unreasonable collection efforts.

J. D. Johnson, manager of one of Wyatt's Food Stores, testified that Mrs. Riley had been a faithful and trusted employee in the bakery department at Wyatt's for about nine years and that up until November 9, 1950, she was a capable employee and was in good health. Along about November, or December, 1950, she began to get highly nervous. During such time, she received numerous telephone calls from the loan companies and sometimes it would take her a half a day to recover from such nervous spells. He further testified that because of her nervous condition during such time she was unable to do her work accurately. Bill Inge, another employee of Wyatt's Food Store, gave similar testimony about Mrs. Riley's nervous condition.

Allen V. Riley testified that after having dealings with Empire, Mrs. Riley wrote all the loan companies stating that they could make no further payments on their loans, and at such time he was in good physical condition and holding down a job as a night watchman, during which time he was forced to sleep in the daytime. After the Rileys had written the letters on or about November 9, 1950, the loan company began a series of collection efforts by telephone and by personal calls. Mr. Riley testified that he was working as a night watchman for Fleming Paper Company, and was employed by Smith Detective Agency and that the loan company would call him at both places and at his home. The calls at his home disturbed his sleep. He further testified that they accused him of being a deadbeat and that they were going to have their money regardless of how they had to get it. After testifying to all the harassment from the loan company and about the loan company's calling at the place where he worked, he testified that he informed Empire that if it continued to harass him he was going to lose his job. He further testified that the loan company threatened to ruin his credit with the Retail Merchant's

Association and that agents from Empire came to his home during the nighttime and stayed for 30 to 40 minutes trying to collect on his note. He further testified that said person indicated to him that he might take more drastic measures, and when asked what he meant by drastic measures, this agent said: "Well, he said that they needed to use some of the practices that they had in the big cities, that there they made them pay." He further testified that he received numerous telegrams and letters in addition to the personal calls and telephone calls.

Mr. Riley further testified substantially as follows: that one of the agents from Empire visited him at a time when a Mrs. Johnson was present; that this person was almost a giant and stayed about thirty minutes one time and about an hour and a half another time and the calls were made at night at nine and ten o'clock; that Mrs. Johnson asked Empire's agent to leave and was told he would leave when he got through with these deadbeats; that after these calls, he felt very nervous and the effect of these calls on him was disastrous and made him very nervous, gave him headaches and caused him to lose sleep and that his blood pressure would go up and he felt a pounding in his head; that the calls from Empire were increasing just before his stroke.

T. A. Williams, supervisor of the night watch department with Smith Detective Agency testified to the frequent telephone calls for Mr. Riley and when asked, "Mr. Williams, state the facts as to whether or not these calls affected the likelihood of Mr. Riley's keeping his job", he answered, "That's right."

Empire filed an instrument herein which is endorsed, "Consent to Entry of Judgment on Portion of Plaintiffs' Claim", wherein it, in effect, confessed and agreed that it had violated the law by charging and collecting from these appellants more than 10 percent interest for the use, forbearance and detention of money. At a time when it had charged a greater rate of interest than the law permits and at a time when, in law, the Rileys owed them no money, and at a time when Empire, in effect, confesses it was legally obligated to the Rileys for $174, Empire was harassing and impliedly making threats against these appellants. The methods employed by Empire remind one of the words of the poet when he said, "Man's inhumanity to man makes countless thousands mourn."

Insofar as the Bankers Health and Accident Company is concerned, the judgment of the trial court is affirmed; as to the other defendants, the judgment of the trial court is reversed and the cause is remanded for a new trial.